M. V. NOGUEIRA V. THE STATE.

No. 15867.  Delivered April 19, 1933.
Reported in 59 S. W. (2d) 831.

The opinion states the case.

*Oren Parmeter,* of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for altering, mutilating, etc., a public record; punishment, two years in the penitentiary.

Article 1002, P. C., forbids that any person, without authority of law, shall wilfully and maliciously "change, alter, mutilate, destroy, deface, or injure" any book, paper, record or

any other document, required or permitted by law to be kept by any officer within this state. The indictment in this case charged that appellant, on the 2d day of January, 1930, "did then and there without authority of law wilfully and maliciously change, alter, mutilate, destroy, deface and injure a record, * * * which record was then and there required and permitted by law to be kept by J. B. Finks, district clerk in and for Dallas county, Texas." The indictment sets out with particularity the acts of appellant in so doing; that is, that on December 29, 1929, in cashbook 18, at page 303, of said cashbook of the district clerk of Dallas county, the last entry in said book was 67 497 04 (meaning $67,497.04), and that on said January 2, 1930, this appellant entered on the first line of cashbook 19, 1930, of the district clerk of Dallas county, the figures 66 497 04 (meaning $66,497.04). The learned trial judge told the jury, in substance, in his charge that if they found from the evidence beyond a reasonable doubt that appellant had done as above indicated, they should find him guilty.

Article 1123, P. C., penalizes him who with intent to defraud shall make or cause to be made any false entry in a book kept as a book of accounts; and article 358, P. C., penalizes any clerk of a court who knowingly makes any false entry upon the records of his court which may prejudice the rights of any other person. But the language of article 1002, supra, seems beyond question to require that he who violates said article must wilfully and maliciously mutilate, destroy, etc., an existing book, paper, etc., then already in being and a public record. It is true that in a certain sense a man's record may be the continuous aggregate of his deeds, and the records of a county or state may be taken to mean the continuous entries of various accounts from day to day or year to year; but in article 8 of our Penal Code we are told that in construing this Code, except when a word, term or phrase is specially defined, all of same are to be taken and construed in the sense in which they are understood *in common language,* taking into consideration the context and subject-matter relative to which they are employed. Viewing the context of article 1002, supra, we note that everything else named in said article, aside from the word "record," is clearly some existing, tangible, material substance such as "books, papers, and any other documents permitted or required to be kept by officers"; also looking to the acts made penal in said article, we note as part of the context such acts to be "change, alter, mutilate, destroy, deface or injure." To attempt to correctly apply to the intangible thing sometimes called a record, as against the tangible book in which records are kept,

the terms of this statute would necessitate that in such case the thing this man was accused of doing might with propriety be said to be to mutilate, destroy or deface the record, which leads to a seeming absurdity. In 34 Cyc. at page 585, we find the statement that the term "record" is ordinarily applied to public records only, in which sense a record is a written memorial made by a public officer authorized by law to perform that function and intended to serve as something written, said, or done. Many authorities are cited in the notes to said text, about the clearest being the definition found in Cyclopedic Law Dictionary as follows: "Record, in its broadest sense, is a memorandum public or private, of what has been done, ordinarily applied to public records only, in which sense it is a written memorial made by a public officer." We might add as applicable to the instant case, that a book cannot be properly styled a public record till something has been recorded therein, and a book styled "Cashbook 19" could hardly be a public record which could be mutilated, destroyed or defaced in the sense intended in article 1002, supra, until something had been written therein by some one authorized so to do. In addition to this, we refer to the well-known doctrine of ejusdem generis, application of which would seem to require that the word "record" be construed as meaning a physical thing then in existence and similar to books, papers, documents already written upon and thus made public records. See Spalding v. People, 172 Ill., 40, 19 Corpus Juris, p. 1255, where many authorities are collated: Ex parte Lingenfelter, 64 Texas Crim. Rep., 30.

The authorities of Dallas county seem to have proceeded in this case on the hypothesis that a false entry in a new cashbook intended to be thereafter a part of the books of account of the county would be a mutilation, destruction, defacing, altering, etc., of a public record required or permitted to be kept by public officers in this state so as to make punishable under article 1002, supra, him who did such act; but we do not so conclude.

It is not claimed that the accused in this case changed Cashbook 18, which was already in existence, or that he multilated, destroyed, changed or altered Cashbook 19 after the entry was made, or as to anything already written or entered therein. In our judgment the indictment in this case charged no offense. The facts fail to show any mutilation, destruction, defacing, alteration, etc., such as is forbidden by article 1002, supra.

The judgment will be reversed and the prosecution ordered dismissed.

*Reversed, and prosecution ordered dismissed.*