Gilbert v. State 







AFFIRMED
JUNE 14, 1990

NO. 10-89-243-CR
Trial Court
# 13,778
IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

WOODROW GILBERT,
Appellant
v.

THE STATE OF TEXAS,
Appellee

* * * * * * * * * * * * *

From 82nd Judicial District Court
Robertson County, Texas

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
Â 
On January 22, 1988, Appellant executed a written statement
confessing to the murder of his wife. See TEX. PENAL CODE ANN. Â§
19.02 (Vernon 1989). On October 10, 1989, the court held a hearing
on Appellant's motion to suppress the confession. See Jackson v.
Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); TEX.
CODE CRIM. PROC. ANN. art. 38.22(6) (Vernon 1989). Appellant
claimed that his confession was inadmissible because he was
incompetent at the time it was executed, and thus did not execute
it voluntarily. The court overruled the motion. Subsequently,
Appellant pleaded "no contest" to the charge, and was sentenced to
sixty years in prison. The only point is that the court erred when
it denied the motion to suppress. The judgment will be affirmed.
At a hearing on a motion to suppress a confession, the court
is the judge of the credibility of the witnesses and the weight to
be given their testimony. Burdine v. State, 719 S.W.2d 309, 318
(Tex. Crim. App. 1986). The court's findings will not be disturbed
on appeal unless there was an abuse of discretion. Barton v.
State, 605 S.W.2d 605, 607 (Tex. Crim. App. [Panel Op.] 1980). 
Furthermore, the state has the burden of proving by a preponderance
of the evidence that the defendant voluntarily and knowingly waived
his privilege against self-incrimination. Colorado v. Connelly,
479 U.S. 157, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986). 
Deputy Gordon testified at the hearing that on January 10,
1988, he transported Appellant from Travis County to Robertson
County pursuant to an arrest warrant. He read Appellant his
Miranda


 warnings when they got into the car, and he and Appellant
talked the entire trip. He claimed that Appellant was coherent and
understood "very well what I was talking about." During the next
twelve days, Gordon saw Appellant on several occasions, and on each
occasion he read him the Miranda warnings. 
On January 22, Appellant asked to see Gordon, and Gordon again
read him the Miranda warnings. Appellant, who was coherent,
responded to questions and was able to carry on a conversation,
confessed to killing his wife. Gordon told Appellant that he
needed to "get it on paper," took the statement, read it back to
Appellant, and had him sign it. He claimed that he did not have
Appellant write the statement because he did not "feel like we
could read them, and [he] didn't feel like they'd be presentable in
Court because of the English."
At the hearing, Appellant offered into evidence his medical
records which reflected his diagnosis as "paranoid schizophrenic
and manic depression." He claimed that he heard "voices," was not
able to distinguish between reality and the voices, and never
understood the Miranda warnings. Appellant testified that Gordon
told him to "sign [the confession]." However, when cross-examined,
Appellant said he was able to understand that an attorney had been
appointed to represent him and that he was charged with murder,
even though he still claimed to hear voices.
Based on the record as a whole, the court did not abuse its
discretion when it denied the motion to suppress. See Barton, 605
S.W.2d at 607. Point one is overruled and the judgment is
affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
BOB L. THOMAS
DO NOT PUBLISHChief Justice



go to the bathroom out of?

A.  Yes.

Q.Â  And then you pushed it together, and said
what?

A.Â  The puffiness.

Q.Â  The puffiness on either side of that hole,
what do you call that?

A.Â  Cheeks.

Q.Â  These are the cheeks?

A.Â  Yes.

Q.Â Â  And where is the booty then?

A. Â The whole thing.

Q.Â  The whole entire thing?

A.Â  Yes. 

Â Â Â Â Â Â Â Â Â  Popp relies on a case from Texarkana to support his argument that there is no evidence of penetration without the
aide of conjecture or speculation because A.W. describes the ÂbootyÂ as Âthe
whole thing,Â not just the anus.Â  See Sessums v. State, No.
06-02-00149-CR, 2003 Tex. App. LEXIS 5477 (Tex. App.ÂTexarkana 2003)(not
designated for publication), revÂd and remanded, 2003 WL 22855433 (Tex. Crim. App. Nov. 26, 2003)(not designated for publication). Â However, the operative
word in this case is Âin.ÂÂ  

Â Â Â Â Â Â Â Â Â  The child in Sessums simply
said he had a Âsore bobo.ÂÂ  Dorothy testified that A.W. said Popp stuck his
finger Âin my booty.ÂÂ  (Emphasis added).Â  She also stated that A.W. told
her Popp put his finger Âin both parts.ÂÂ  One of the many definitions of the
word in is Âa Â used as a function word to indicate inclusion,
location, or position within limits[;]Â  b:Â  INTO.ÂÂ  WebsterÂs Collegiate
Dictionary, 10th Ed., 585 (1993).Â  The jury could have determined that Popp
stuck his finger into A.W.Âs anus.Â  

Â Â Â Â Â Â Â Â Â  Thus, looking at all of the evidence
in the light most favorable to the verdict, any rational trier of fact
could have found the essential element, penetration, beyond a reasonable
doubt.Â  See Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d
560, 99 S. Ct. 2781 (1979)(emphasis in original); Vodochodsky v. State,
158 S.W.3d 502, 509 (Tex. Crim. App. 2005).Â  The evidence is legally sufficient
to support the juryÂs verdict.

Â Â Â Â Â Â Â Â Â  In arguing that the evidence is factually
insufficient, Popp claims that the proof of guilt is so weak as to undermine
the confidence in the juryÂs determination because, Popp argues, when
describing the licking of her anus as being up inside the hole, A.W. was quick
to clarify she did not mean inside the hole, but the area outside the hole.Â 
Thus, Popp argues, A.W. was capable of saying what she meant.Â  Again, Popp
focuses on A.W.Âs previous definition of Âbooty.ÂÂ  However, the operative word,
again, is Âin.ÂÂ  Thus, the verdict was not too weak to support a finding of
penetration beyond a reasonable doubt.

Â Â Â Â Â Â Â Â Â  Considering all of the evidence in a
neutral light, the jury was rationally justified in finding guilt beyond a
reasonable doubt.Â  Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).Â  The evidence is factually sufficient to support the verdict.

Â Â Â Â Â Â Â Â Â  PoppÂs sole issue is overruled.Â  The
trial courtÂs judgment is affirmed.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  TOM
GRAY

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Before
Chief Justice Gray,

Â Â Â Â Â Â Â Â Â  Justice
Vance, and

Â Â Â Â Â Â Â Â Â  Justice
Reyna

Affirmed

Opinion
delivered and filed July 6, 2005

Do
not publish

[CRPM]