In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00031-CR
______________________________


LUTHER MICHAEL HARRIS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 173rd Judicial District Court
Henderson County, Texas
Trial Court No. B-12,284


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          Luther Michael Harris


 appeals from his conviction for aggravated assault with a
deadly weapon. The court assessed punishment at forty years' imprisonment. The
evidence shows that the incident occurred while Harris was incarcerated, and he was
convicted for attacking a fellow inmate. Harris raises no evidentiary sufficiency points, but
contends he was "denied Due Process by the refusal of the trial court to admit exculpatory
evidence, evidence that the investigation had unfairly focused on [him] and by implication,
evidence that the prosecution had produced perjured testimony." He also contends the
court erred by failing to allow him to make a bill of exceptions containing new evidence
about misconduct by the district attorney. 
          The record shows that inmate Robert Dennis was severely beaten in the shower of
the Henderson County Detention Center. Harris was implicated in the beating by the
testimony of Officer David Rumbo, who testified that he and another officer had checked
the hands of the inmates for swelling and that Harris' hands were "white in between the
knuckles . . . knuckles were real red . . . ." The officers also testified Harris had clothes that
were soaking in the commode. The officers further testified that inmate Eric Tipton's hands
were red, and therefore suspect; they also suspected Jack Raburn was involved. The next
day, Raburn and Tipton gave statements in which they implicated themselves and Harris
as the three perpetrators of the assault. 
          Harris first contends the court erred by refusing to allow him to introduce a letter into
evidence. The letter was to Harris from codefendant Eric Tipton (who asserted his right
not to testify). In part, Tipton wrote:
I finally got out of a single cell its [sic] like the officers would not let me have
my privalages [sic] back until I agreed to the story they had. I talked to them
once and told them the truth about you were upstairs and they wanted to
argue with me[.] I think it's because Gary Hey told them he gave you a mop
ringer [sic] because he was worried someone would tell on him for hitting
[R]at


 with it and his finger prints where [sic] all over it[.] [T]he way they
moved you everyone knew they were doing you wrong[.] So hell I think told
the cops you made him do it or something to get out of trouble[.] I do know
Cody sent notes to everyone telling them what to say and he sent me one
that got taken by officer Gerlad[.] I told the investigators the truth[,] man. Im
[sic] sure you have heard all kinds of things but I want to tell you Mike that
I let them know you were up stairs and when you came down stairs Rat was
already messed up and when you came back up the stairs you told me I
should go flip Rat over because it sounded like he would drown in his own
blood and then I went down the stairs and rolled him on his side before you
told [R]oss he needed to push the button and get the officers in to help [R]at. 
When [I] told the cops this they got really mad and threatened me with
murder charges that I would spend my life in jail[.] [I]ts [sic] like they already
had a picture in their mind a case built, how it would work for them and if [I]
didn't tell them like they wanted they would charge me with a life sentence
. . . . I bet that is why there are so many stories so everyone can look like
they did nothing and if they tell what the cops want on you then they are
getting favors from the jail and cops. . . . The chief even threatened me
unless [I] told him you did it all and shit I heard you wanted your attorney
before you talked to anyone and that's why they got mad at you and sent you
off and left everyone else together while they all worked things out . . . .

          Harris first attempts to apply a Brady analysis to the case. Brady v. Maryland, 373
U.S. 83 (1963), involves the failure of the state to provide exculpatory information to a
defendant. It has no application to this case, as it is clear that Harris had possession of
the letter at all times. We therefore need not move to the next level of analysis under
Brady to determine materiality. 
          Harris also contends the investigation was so flagrantly unfair as to require reversal. 
The case cited as authority for this proposition, however, is one in which the only evidence
before the trial court showed that a confession was coerced and that the officers had
refused to provide counsel for the defendant despite his request. Sherman v. State, 532
S.W.2d 634, 636 (Tex. Crim. App. 1976). This is not an analogous situation. All that is
shown by these facts is that the officers promptly focused their attention on Harris as one
of the suspects because of the condition of his hands and because he was washing out
his uniform in his toilet. This would justify paying close attention to Harris, and he has
directed us to no authority that would allow us to review those actions in this context.
          Harris also contends the court abused its discretion by refusing to allow him to make
a bill of exceptions containing new evidence that would show prosecutorial misconduct. 
This was presumably to be supportive of his motion for new trial. However, by the time he
filed his request, on February 26, 2005, the time period for ruling on a motion for new trial
had expired.


 See Tex. R. App. P. 21.8. Thus, it was too late to attempt to add to the
record in any respect, and the trial court did not abuse its discretion by refusing to permit
Harris to add to the record at that late date.
          The contentions of error are overruled.
          We affirm the judgment.
 

                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      August 24, 2005
Date Decided:         September 14, 2005

Do Not Publish